IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMERICAN REGISTRY OF RADIOLOGIC TECHNOLOGISTS | § § § | CIVIL NO. SA-12-CV-109-DAE |
| V. | § § | |
| DIANE BENNETT | § § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

DORSEY & WHITNEY, LLP
Shari L. J. Aberle (MN No. 0306551)
  aberle.shari@dorsey.com
Eric R. Sherman (MN No. 0331430)
  sherman.eric@dorsey.com
Meghan E. Lind (MN No. 0389034)
  lind.meghan@dorsey.com
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

HAYNES AND BOONE, LLP
Abigail Ottmers (TX SBN 24037225)
  abigail.ottmers@haynesboone.com
112 East Pecan, Suite 1200
San Antonio, TX 78205
Telephone:  (210) 978-7000
Facsimile:  (210) 978-7450


*Attorneys for Plaintiff The American Registry of Radiologic Technologists*

Dated:  January 23, 2013

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

I.     PRELIMINARY STATEMENT .................................................................1

II.    SUMMARY JUDGMENT EVIDENCE ....................................................1

III.   UNDISPUTED FACTS ..............................................................................1

       A.    ARRT Develops Certification And State Licensure Examinations. ........................1

       B.    ARRT Carefully Protects The Confidentiality Of Its Examination
             Questions. ..........................................................................................3

       C.    Bennett Agrees Not To Violate The Security Of ARRT Examination
             Questions. ..........................................................................................3

       D.    Bennett Violates The Security Of ARRT Examination Questions. ........................5

IV.    ARGUMENTS AND AUTHORITIES .......................................................6

       A.    Legal Standard .....................................................................................6

       B.    Bennett Undisputedly Copied And Distributed ARRT's Copyrighted
             Examination Questions And Summary Judgment Is Therefore Proper. .................7

             1.   ARRT's Certificate Of Copyright Registration Provides Prima
                  Facie Evidence Of A Valid Copyright. ..............................................7

             2.   The Overwhelming Evidence Establishes That Bennett Copied
                  ARRT's Copyrighted Materials. .......................................................9

             3.   Not Only Does The Evidence Show Bennett Infringed ARRT's
                  Copyrights, It Demonstrates That She Acted Willfully. ...........................12

       C.    Summary Judgment Is Also Proper On ARRT's Breach Of Contract
             Claim. ................................................................................................14

       D.    Summary Judgment Is Proper On ARRT's Misappropriation Of Trade
             Secrets Claim Because Bennett Undisputedly Acquired And Used
             ARRT's Trade Secrets. ...........................................................................15

             1.   ARRT's Examination Questions Qualify As Trade Secrets. .....................15

             2.   Bennett Acquired ARRT's Trade Secrets Through Improper
                  Means. ..................................................................................17

        3.     Bennett Used ARRT's Examination Questions Without Authorization. ........................................................................................18

   E.   Bennett Tortiously Interfered With ARRT's Contracts By Inducing Her Students To Reveal Confidential Examination Questions....................................19

V.    CONCLUSION...................................................................................................20

CERTIFICATE OF SERVICE ....................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Gen. Life Ins. Co. v. Mickelson,*
No. H-11-3421, 2012 WL 6020339 (S.D. Tex. Dec. 3, 2012) ................................................ 15

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,*
271 F.3d 624 (5th Cir. 2001) ..................................................................................................... 7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................................... 7

*Berg v. Symons,*
393 F. Supp. 2d 525 (S.D. Tex. 2005) ....................................................................................... 8

*Biggs v. Cabela's, Inc.,*
No. 4:03-CV-0205-A, 2004 WL 530167 (N.D. Tex. Feb. 23, 2004) ...................................... 10

*Bridgmon v. Array Sys. Corp.,*
325 F.3d 572 (5th Cir. 2003) ..................................................................................................... 9

*Brown v. City of Houston,*
337 F.3d 539 (5th Cir. 2003) ..................................................................................................... 7

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................................... 7

*Cent. Point Software, Inc. v. Nugent,*
903 F. Supp. 1057 (E.D. Tex. 1995) .......................................................................................... 8

*Creations Unlimited, Inc. v. McCain,*
112 F.3d 814 (5th Cir. 1997) ................................................................................................... 10

*Edmark Indus. SDN BHD v. S. Asia Int'l (H.K.) Ltd.,*
89 F. Supp. 2d 840 (E.D. Tex. 2000) ........................................................................................ 9

*Educ. Testing Srv. v. Simon,*
95 F. Supp. 2d 1081 (C.D. Cal. 1999) ................................................................................. 9, 11

*Educ. Testing Srvs. v. Katzman,*
793 F.2d 533 (3rd Cir. 1986) ...................................................................................... 8, 11, 20

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) ................................................................................................................... 9

*Flowserv Corp. v. Hallmark Pump Co.,*
No. 4:09-cv-0675, 2011 WL 1527951 (S.D. Tex. Apr. 20, 2011) ........................................... 10

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ........................................................ 14

*General Universal Sys. v. Lee*
    379 F.3d 131 (5th Cir. 2004) ...................................................................................... 10

*General Universal Sys., Inc. v. HAL, Inc.,*
    500 F.3d 444 (5th Cir. 2007) ...................................................................................... 18

*Glasscraft Door I, L.P. v. Seybro Door & Weathership Co.,*
    No. H–08–2667, 2009 WL 3460372 (S.D. Tex. Oct. 22, 2009) ............................................... 12

*Graduate Mgmt. Admissions Council v. Raju,*
    267 F. Supp. 2d 505 (E.D. Va. 2003) ........................................................................... 13

*Harper & Row Publishers, Inc. v. Nation Enter.,*
    471 U.S. 539 (1985) .................................................................................................. 11

*Holloway v. Skinner,*
    898 S.W.2d 793 (Tex. 1995) ...................................................................................... 19

*In re Bass,*
    113 S.W.3d 735 (Tex. 2003) ................................................................................ 15, 16

*In re Frye,*
    No. CC-08-1055, 2008 WL 8444822 (B.A.P. 9th Cir. Aug. 19, 2008) .................................... 17

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.,*
    12 F.3d 527 (5th Cir. 1994) ...................................................................................... 11

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,*
    345 F.3d 1140 (9th Cir. 2003) ...................................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .................................................................................................... 7

*Meinecke v. H&R Block of Houston,*
    66 F.3d 77 (5th Cir. 1995) .......................................................................................... 7

*Microsoft Corp. v. Nop,*
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) ......................................................................... 13

*Microsoft Corp. v. Software Wholesale Club, Inc.,*
    129 F. Supp. 2d 995 (S.D. Tex. 2000) ........................................................................... 12

*Murray v. Ed. Testing Serv.,*
    170 F.3d 514 (5th Cir. 1999) ...................................................................................... 19

*National Council of Exam'rs for Eng'g & Surveying v. Cameron-Ortiz,*
    626 F. Supp. 2d 262 (D.P.R. 2009)......................................................................... 15, 20

*Norma Ribbon & Trimming, Inc. v. Little,*
    51 F.3d 45 (5th Cir. 1995) ............................................................................... 7, 8, 9

*Peel & Co. v. Rug Market,*
    238 F.3d 391 (5th Cir. 2001) ..................................................................................... 9

*Playboy Enter., Inc. v. Webbworld, Inc.,*
    968 F. Supp. 1171 (N.D. Tex. 1997) ......................................................................... 8

*Prudential Ins. Co. of Am. v. Fin. Review Servs, Inc.,*
    29 S.W.3d 74 (Tex. 2000)......................................................................................... 19

*Ramsey v. Henderson,*
    286 F.3d 264 (5th Cir. 2002) ..................................................................................... 7

*RMC Publ'ns, Inc. v. Doulos PM Training,*
    No. 3:07-CV-2139-O, 2010 WL 742575 (N.D. Tex. Mar. 3, 2010) ....................... 13

*Ruston v. Dep't of Justice,*
    521 F. Supp. 2d 18 (D.D.C. 2007) ........................................................................... 17

*Smith Int'l, Inc. v. Egle Grp., LLC,*
    490 F.3d 380 (5th Cir. 2007) ................................................................................... 14

*Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.,*
    843 S.W.2d 470 (Tex. 1992)..................................................................................... 19

*Textron Fin. Corp. v. Anchor Marine & Tackle, Inc.,*
    No. SA–09–CV–885–XR, 2010 WL 2991068 (W.D. Tex. July 26, 2010) .............. 15

*TIG Ins. Co. v. Sedgwick James of Wash.,*
    276 F.3d 754 (5th Cir. 2002) ..................................................................................... 7

*Wellogix, Inc. v. Accenture, LLP,*
    No. 3:08-CV-119, 2011 WL 1542557 (S.D. Tex. Apr. 22, 2011)............................ 15

*Wood v. B L Bldg. Co.,*
    No. H-03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004) ................................ 10

### RULES

17 U.S.C. § 410(c) ....................................................................................................... 8

17 U.S.C. § 411(b) ....................................................................................................... 8

17 U.S.C. § 504(c) (Copyright Act)................................................................. 12, 13, 14

17 U.S.C. § 505 ............................................................................................... 14

Fed. R. Civ. P. 56(c) ........................................................................................ 7


**TREATISES**

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40................................................................. 18

I.      PRELIMINARY STATEMENT

This case involves Defendant Diane Bennett's deliberate and unlawful strategy to make money by helping students cheat on certification and state licensure examinations in radiologic technology.  Ignoring U.S. Copyright law and her contractual obligations to Plaintiff The American Registry of Radiologic Technologists ("ARRT"), Bennett created an examination preparation course, solicited questions from students who had recently taken the exams, distributed the questions to students preparing to take the exams, and then bragged about her dishonest actions on her company Web site.  ARRT, who spent significant time and resources creating the copyrighted examination questions at issue, caught Bennett red-handed.  Now, with an abundant collection of irrefutable evidence, ARRT moves the Court for an order granting summary judgment on its claims against Bennett for copyright infringement, breach of contract, misappropriation of trade secrets, and tortious interference.[1]

II.     SUMMARY JUDGMENT EVIDENCE

Declaration Of Jerry B. Reid In Support Of Plaintiff's Motion For Summary Judgment and Exhibits 1-12, attached thereto;

Declaration Of Lauren J. Wood In Support Of Plaintiff's Motion For Summary Judgment and Exhibits A-C, attached thereto; and

Declaration Of Shari L. J. Aberle In Support Of Plaintiff's Motion For Summary Judgment and Exhibits 1-42, attached thereto.

III.    UNDISPUTED FACTS

A.      ARRT Develops Certification And State Licensure Examinations.

ARRT is a nonprofit organization that develops and administers examinations for individuals seeking certification or licensure in several fields of medical radiologic technology.

---

[1]    Based on Bennett's conduct, the Bankruptcy Court for the Western District of Texas already entered judgment in favor of ARRT against Bennett's company, Limited X-Ray Licensure Course Providers ("Course Providers"), awarding ARRT $300,000.00 in statutory damages. *See* Declaration of Shari L. J. Aberle, Ex. 1, *ARRT v. Ltd. X-Ray Licensure Course Providers*, No. 10-05138-lmc, Order Granting Pl.'s Mot. for Entry of Default J. Against Limited X-Ray Licensure Course Providers (Bankr. W.D. Tex. Oct. 12, 2011), ECF No. 38.

*See* Declaration of Jerry B. Reid ¶ 3.  The ARRT examinations at issue in this case are the Limited Scope of Practice in Radiography Examination and the Bone Densitometry Equipment Operator Examination (jointly the "Examinations").  *Id.* ¶ 4.  Radiography involves the use of controlled doses of x-rays to obtain images helpful for diagnosing illness, injury, and treatment progress.  *Id.* ¶ 5.  Bone densitometry equipment operators use x-rays to measure bone density. *Id.*  Bone density scans are used to diagnose and assess the treatment or progression of osteoporosis.  *Id.*  If improperly performed, radiography or bone density scans can result in missed or incorrect medical diagnoses.  *Id.*  More than a dozen states, including Texas, contract with ARRT to use one or both of these Examinations as state license examinations.  *Id.* ¶ 6.

The Examinations are used to make inferences regarding an examinee's knowledge of the universe of information relevant to the subject matter.  *Id.* ¶ 7.  The questions that appear in any particular administration of the Examinations on a given subject represent a sample from the much larger universe of questions that could be asked about that subject.  *Id.*  Although multiple forms of the Examinations are given throughout each year, the questions used on each of the Examinations are drawn from a pool of highly confidential questions maintained by ARRT.  *Id.* As a result, numerous questions are used repeatedly in successive years, which serves to ensure continuity in test difficulty, as well as comparability of scores between candidates completing the Examinations at different times.  *Id.*

Because examination questions must be reused, the disclosure of questions appearing on the Examinations threatens the fundamental ability of the Examinations to serve their purpose. *Id.* ¶ 8.  If an examinee has advance information about any of the specific questions on an Examination, the examinee's results may not accurately represent the examinee's overall knowledge and it would seriously degrade the accuracy of any inference that may be drawn about an examinee's actual knowledge of the subject matter.  *Id.* ¶¶ 9-10.  Moreover, if unqualified individuals pass the Examinations and obtain licensure, the accuracy of medical

-2-

diagnoses may suffer.

**B.      ARRT Carefully Protects The Confidentiality Of Its Examination Questions.**

Because Examination questions must be reused, ARRT carefully protects the confidentiality of its Examination questions. *Id.* at ¶ 11. The Examination questions are not released or made available to the public. *See* Declaration of Lauren J. Wood ¶ 2. In addition, ARRT requires that individuals seeking to sit for the Examinations enter into a non-disclosure agreement with ARRT in which they agree not to disclose any questions appearing on the Examinations. *Id.* Exs. A-B. Even within ARRT, only certain individuals who have a legitimate business need to do so are able to access Examination questions through a secure computer network. *Id.* ARRT's Psychometric Services area, where the Examination items are housed, is restricted to a very limited number of ARRT staff and ARRT's facility is a locked and secure facility that is not open to the public. *Id.*

ARRT also protects its Examination content through copyright law. When ARRT secures copyrights on its Examination questions, it employs the special Copyright Office procedures for protection of secure test materials so that confidential material is not disclosed to the public. *See* Reid Decl. ¶ 11. ARRT has been awarded a Copyright Registration No. Txu 1-279-139 covering its test item bank. *See* Wood Decl. ¶ 4, Ex. C. The item bank includes the questions that have appeared on the Examinations. *See id.* ¶ 4. The Examination questions compromised by Bennett's unlawful conduct were in ARRT's item bank on the March 8, 2006 effective date of the copyright registration. *Id.* ¶ 4.

**C.      Bennett Agrees Not To Violate The Security Of ARRT Examination Questions.**

In addition to administering the Examinations, ARRT maintains a registry of certified radiologic technologists ("ARRT Certification"). *See* Reid Decl. ¶ 12. To obtain ARRT Certification, one must graduate from an approved educational program, comply with ethical and other standards, and pass ARRT's certification examination. *Id.* An individual who obtains

Certification may register with ARRT, which must then be renewed annually. *Id.* As the largest national credentialing organization for radiologic technologists, ARRT has more than 300,000 registrants who successfully have met its educational, testing, and other requirements and who consequently have been registered by ARRT as radiologic technologists. *Id.* It is the preeminent organization in the nation that certifies and registers radiologic technologists and is the only organization in the country that registers individuals qualified in Radiography. *Id.* While registration with ARRT is voluntary, it is considered a significant credential in the field of radiologic technology. *Id.*

Bennett obtained ARRT Certification in Radiography in 1993 and in Bone Densitometry in 2001. (Def.'s Resp. to Pl.'s Adversary Compl. ¶ 22; Bankr. W.D. Tex. No. 10-05138-lmc, ECF No. 4.) Bennett registered these Certifications with ARRT and in her annual Applications for Renewal of Registration, she expressly agreed "to be legally bound in all respects" by the "terms and conditions set forth in the 'Agreement of Applicants for Renewal of Registration' section of the ARRT Rules and Regulations," which were incorporated into and made a part of her Applications. *See* Aberle Decl. Ex. 4 (Bennett Dep. 95:18–105:15), Exs. 28-38. The Agreement of Applicants for Renewal of Registration requires the applicant to expressly agree he or she has been in compliance with ARRT's Governing Documents at all times since initial certification, and to further agree to continue to be "legally bound by and [] abide by all the terms and conditions of this Application and Agreement and the [ARRT's] Governing Documents." *See* Reid Decl. ¶ 15, Exs. 5-8 at § 5.02.

ARRT's Standards of Ethics, which are part of its Governing Documents, prohibit registrants, like Bennett, from engaging in "conduct that subverts or attempts to subvert ARRT's examination process." *See* Reid Decl. ¶¶ 15-16, Exs. 9-12 at § B.2 (ARRT Standards of Ethics for 2006-2009). Specific prohibited conduct includes:

> having unauthorized possession of any portion of or information concerning a
> future, current, or previously administered examination of ARRT; or disclosing

> information concerning any portion of a future, current, or previously
> administered examination of ARRT; or disclosing what purports to be, or under
> all circumstances is likely to be understood by the recipient as, any portion of or
> 'inside' information concerning any portion of a future, current, or a previously
> administered examination of ARRT.

*Id.* ¶ 15, Exs. 9-11 at § B.2(i); *see also* Ex. 12 at § B.2(iii) and (iv) (prohibiting applicants from

"reconstructing (whether by memory or otherwise) ... or transmitting any portion of examination

materials" or "using or purporting to use any portion of examination materials which were

obtained improperly or without authorization for the purpose of instructing or preparing any

applicant for examination....").

### D.    Bennett Violates The Security Of ARRT Examination Questions.

Bennett operated preparation courses for the Examinations through her company, Course

Providers.  Bennett is the sole owner and sole managing member of Course Providers.  *See*

Aberle Decl. Ex. 4 (Bennett Dep. at 14:23–15:2, 16:19–17:17); Exs. 8-9.  As a part of her

courses, Bennett obtained Examination questions from her students who had just taken the

Examinations and she then distributed those questions to her students who were preparing to take

the Examinations.  Bennett expressly acknowledged this behavior on her company's Web site,

touting access to questions from the Examinations as a reason to purchase her courses:  "In

addition we send you any new questions we get from students recently taking their exam so you

have as many up to date questions as possible."  *Id.* Ex. 4 (Bennett Dep. at 23:22–24:4), Ex. 10.

As Examinations were administered, Bennett quickly collected questions from students

taking the Examinations and then compiled the questions into a series of e-mails that were sent

out to her prep course students who were about to sit for the Examinations.  For example, in a

January 29-30, 2008 e-mail exchange between Bennett and Anthony Macca, a student of

Bennett's review course, Bennett writes:

Filed Under Seal

Filed Under Seal



*Id.* at Ex. 19 (typographical errors in original).

In another example, Bennett wrote to "Darsrth Peraza" on January 8, 2008, asking: *Id.* at Ex. 20. On September 19, 2008, Bennett wrote to yet another examinee, Adam Brown, once again for the purpose of obtaining Examination questions: *Id.* at Ex. 14; *see also* Ex. 3-G (e-mail from another student forwarding 18 Examination questions and stating, ); Ex. 5 (Brown Dep. at 17:16-20); Ex. 6 (Steinhaus Dep. at 26:1-12).

Bennett, of course, did not stop there. Once she obtained the Examination questions, she distributed them on to her Course Provider students preparing to sit for the Examinations. *See, e.g., id.* at Exs. 3-B–3H, 15-18, 21-25 (e-mails from Bennett forwarding Examination questions to students taking her review course); Ex. 5 (Brown Dep. at 16:13–17:20); Ex. 6 (Steinhaus Dep. at 19:15–20:13, 23:20–24:19, 26:1-12). All of these communications show Bennett actively solicited students to provide Examination questions for her to distribute to her other students and future examinees.

## IV.   ARGUMENTS AND AUTHORITIES

### A.   Legal Standard

Summary judgment should be granted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.

-6-

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, a dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  If the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  However, the non-moving party must show more than "some metaphysical doubt as to the material facts." *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. *Brown*, 337 F.3d at 541; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

**B.      Bennett Undisputedly Copied And Distributed ARRT's Copyrighted Examination Questions And Summary Judgment Is Therefore Proper.**

To prevail on its claim of copyright infringement, ARRT must establish that it <u>owned</u> a valid copyright on the Examination questions at issue and that Bennett <u>copied</u> those Examination questions. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).  The record in this case contains irrefutable evidence of both elements.

**1.      ARRT's Certificate Of Copyright Registration Provides Prima Facie Evidence Of A Valid Copyright.**

The first element of copyright infringement – ownership of a valid copyright – requires

proof of originality, copyrightability, and compliance with statutory formalities. *Norma Ribbon*, 51 F.3d at 47. A certificate of registration, if made before or within five years of the first publication of the work, constitutes prima facie evidence of the validity of the copyright, 17 U.S.C. § 410(c); *Norma Ribbon*, 51 F.3d at 47, and, consequently, prima facie evidence of the originality of the design. *See Playboy Enter., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1174 (N.D. Tex. 1997) (granting plaintiff's motion for summary judgment, in part, because "copyright registrations are *prima facie* evidence of the validity of the copyrights"); *Cent. Point Software, Inc. v. Nugent*, 903 F. Supp. 1057, 1059 (E.D. Tex. 1995) (granting summary judgment and noting plaintiff established ownership by providing copies of certificates of registration).

It is undisputed that ARRT has a copyright for all of its Examination questions. *See* Wood Decl. ¶ 5, Ex. C. ARRT's certificate of copyright registration is prima facie evidence of the validity of that copyright. 17 U.S.C. § 410(c); *Playboy*, 968 F. Supp. at 1174; *Educ. Testing Srvs. v. Katzman*, 793 F.2d 533, 539 (3rd Cir. 1986) (a copyright in the compilation of questions, such as questions for scholastic aptitude test, includes copyright protection for the questions themselves).

Bennett may rebut this presumption of validity by presenting evidence that ARRT willfully misstated or failed to state a fact that, if known, might have caused the Copyright Office to reject the copyright application. *Berg v. Symons*, 393 F. Supp. 2d 525, 542 (S.D. Tex. 2005). However, this is an onerous burden to meet. Even if the certificate contains inaccurate information, it still satisfies the registration requirement unless the applicant included the information with knowledge it was inaccurate and the Register of Copyrights would have refused registration had he or she known of the inaccuracy. *See* 17 U.S.C. § 411(b); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003). Bennett has not – and cannot – present any evidence suggesting ARRT defrauded the Copyright Office.

Alternatively, Bennett may seek to invalidate ARRT's copyright registration by showing

evidence that the copyrighted works "already existed in the public domain." *Norma Ribbon*, 51 F.3d at 47. Bennett's burden is high. The "Supreme Court has instructed that the threshold for originality is very low." *Edmark Indus. SDN BHD v. S. Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840, 844 (E.D. Tex. 2000) (citing *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991)). Thus, in *Feist*, the Court noted that "even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement." *Id.* at 348. ARRT's Examination questions contain both original information and original arrangements and Bennett has not – and cannot – proffer any evidence that they exist in the public domain, rendering futile any attempt to rebut ARRT's presumption of validity.

### 2. The Overwhelming Evidence Establishes That Bennett Copied ARRT's Copyrighted Materials.

"Two separate inquiries must be made to determine whether actionable copying has occurred. The first question is whether the alleged infringer copied, or 'actually used the copyrighted material in his own work.'" *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Because direct evidence of copying is rare, it is typically inferred from (1) evidence that the defendant had access to the copyrighted work prior to creating the infringing work and (2) substantial similarity between the two works. *See Peel & Co. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

Here, the there can be no dispute that Bennett had access to ARRT's Examination questions. As Bennett's own e-mail correspondence reveals, she solicited her Course Provider students to provide her with Examination questions, obtained questions from them, and then copied and distributed these questions to others. *See* Aberle Decl. Exs. 3-A–3H, 15-18, 21-26. *See Educ. Testing Srv. v. Simon*, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) (defendant owners of test preparation company had access to copyrighted examination questions "through students who had recently taken the test and voluntarily provided this information").

The second element, substantial similarity, requires evidence that the two works "are adequately similar to establish appropriation." *General Universal Sys. v. Lee,* 379 F.3d 131, 142 (5th Cir. 2004). "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain,* 112 F.3d 814, 816 (5th Cir. 1997). While the question of substantial similarity is typically one for the finder of fact, "a court may nonetheless be justified in ruling for a plaintiff on a summary judgment motion when the similarities between plaintiff's and defendant's works are so overwhelming as to preclude the possibility of independent creation." *Wood v. B L Bldg. Co.,* 2004 WL 5866352, at *9 (S.D. Tex. June 22, 2004) (granting plaintiff's motion for summary judgment where the infringing work was "uncannily similar" to the copyrighted work); *Biggs v. Cabela's, Inc.,* 2004 WL 530167, at *4 (N.D. Tex. Feb. 23, 2004) (granting plaintiff's motion for summary judgment where side-by-side comparison demonstrated substantial similarity); *Flowserv Corp. v. Hallmark Pump Co.,* 2011 WL 1527951, at *6 (S.D. Tex. Apr. 20, 2011) (granting plaintiff's motion for summary judgment on copyright claim where "no reasonable jury could believe that the images do not rise to the level of substantial similarity").

Here, the evidence of substantial similarity is overwhelming. A side-by-side comparison of 10 of ARRT's Examination questions with information from Bennett's e-mails copying and distributing ARRT's Examination questions demonstrates Bennett copied and infringed ARRT's copyrights in these 10 items.[2] Aberle Decl. Ex. 2. Each of these 10 items was in ARRT's item bank by the March 8, 2006 effective date of ARRT's copyright registration. *See* Wood Decl. ¶ 4.

---

[2]   As a result of Bennett's conduct, ARRT has had to retire at least 87 questions from use in connection with the Limited Scope of Practice of Radiography Examination. Reid Decl. ¶ 19. However, given the circumstances of this case, including a desire to reduce the number of comparisons the Court must review, and a desire to minimize the exposure of test items, ARRT only seeks statutory damages with respect to infringement of these 10 items, each of which is a separate work. ARRT reserves all rights with respect to other and future matters.

Each of these items was in use on the Limited Scope of Practice in Radiography Examination on or before the date of Bennett's e-mails copying the items. *Id.*

As the side-by-side comparison shows, Bennett's copies are substantially similar to ARRT's test items. Aberle Decl. Ex. 2; Ex. 6 (Steinhaus Dep. 20:10-13 (testifying that the questions from Bennett "were very similar to the questions that were on the test to a T.")). ARRT's questions are in multiple choice format, as are several of Bennett's questions. Bennett copied the question and one or more answer choices, including in several instances the same incorrect answer choices shown on the ARRT test item. *Id.* Ex. 2. Because Bennett's students were working from memory, Bennett did not obtain and distribute exact copies of ARRT's test items. That fact, however, does not help Bennett. "Substantial similarity does not require verbatim copying; [Bennett] cannot escape copyright liability by claiming that [her] copying of secure test questions is not word-for-word." *Simon*, 95 F. Supp. 2d at 1088 (citing *Katzman*, 793 F.3d at 541); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 535-36 (5th Cir. 1994) (infringing copies need not be exact copies).

Like the defendant in *Simon*, Bennett "copied the creative 'heart' of each infringed question." *Simon*, 95 F. Supp. 2d at 1088 (citing *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 564-65 (1985) (copying of approximately 300 words from a 200,000-word manuscript was copyright infringement)). While Bennett's correspondence makes clear she was seeking to recreate, to the greatest extent possible, exact copies of the Examination questions, in the end she took the essence of ARRT's copyrighted Examination materials and created substantially similar questions. *See also Katzman*, 793 F.3d at 541 (although not identical, the court found that some of defendant's examination preparation questions were "so strikingly similar" to the standardized examination questions prepared by plaintiff "as to lead to no other conclusion than that they were copied.").

-11-

3.    **Not Only Does The Evidence Show Bennett Infringed ARRT's**
**Copyrights, It Demonstrates That She Acted Willfully.**

A defendant's infringement is willful if he knows his actions constitute an infringement.

*See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1002 (S.D. Tex.

2000). Here, Bennett was acutely aware that her actions were violating ARRT's copyright. She

made an annual promise to protect the contents of ARRT's Examinations. *See* Reid Decl. ¶¶ 14-

16; Aberle Decl. Exs. 28-38. Bennett herself sat for ARRT's Examinations and was aware of the

confidentiality obligations imposed on examinees. *See* Aberle Decl. Exs. 28-38. She reviewed

ARRT handbooks pertaining to the Examinations that stated the Examinations are copyrighted

and that examinees must undertake nondisclosure obligations before sitting for the Examinations.

*See id.* at Ex. 4 (Bennett Dep. at 13:19–14:19), Exs. 28-38. Despite all this, Bennett engaged in

blatantly improper conduct, repeatedly breaking her promises to ARRT. Bennett's solicitation

and distribution of Examination content was a regular part of her business, not an isolated

instance. Bennett even continued her misconduct after she was put on notice of ARRT's claims.

*See id.* Ex. 4 (Bennett Dep. at 9:1-11); Ex. 27.

This undisputed evidence shows Bennett's copyright infringement was willful and

summary judgment is proper. *See generally Glasscraft Door I, L.P. v. Seybro Door &*

*Weathership Co.*, 2009 WL 3460372, at *5-7 (S.D. Tex. Oct. 22, 2009) (granting summary

judgment in part after finding defendant willfully infringed copyrights). ARRT is therefore

entitled to judgment as a matter of law against Bennett with respect to its claim of willful

copyright infringement, and it should be awarded statutory damages. *Microsoft Corp.*, 129 F.

Supp. 2d at 1001-02 (plaintiff's motion for summary judgment granted when evidence supported

award of statutory damages for willful infringement). Section 504(c) of the Copyright Act, 17

U.S.C. § 504(c), provides that a copyright owner may elect at any time before entry of final

judgment to recover an award of statutory damages instead of actual damages and profits.

Statutory damages may range from $750 to $30,000 per work, and may be increased up to

-12-

$150,000 for willful copyright infringement.  17 U.S.C. § 504(c).

Here, the Court should award statutory damages in the amount of $30,000 for each of the 10 infringed works.  17 U.S.C. § 504(c); *see also Graduate Mgmt. Admissions Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003).  In *Graduate Management*, another case involving infringement of copyrights in secure test questions, the Court awarded statutory damages of $150,000 for each of 22 infringed works, or a total of $3.3 million.  *Id.*  In granting the award, the Court noted that the infringer's actions were clearly willful, and that the infringer (like Bennett) touted access to live exam questions on its Web site.  *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238-39 (E.D. Cal. 2008) (awarding $30,000 for each infringed work); *RMC Publ'ns, Inc. v. Doulos PM Training*, 2010 WL 742575, at *4-5 (N.D. Tex. Mar. 3, 2010) (awarding statutory damages of $100,000).

The circumstances of this case warrant a substantial award of statutory damages.  As demonstrated by the undisputed facts cited above, Bennett's infringement was intentional and willful.  In addition, Bennett's conduct endangers public health by creating a risk that unqualified individuals will pass the Examination and obtain licensure to perform medical imaging procedures.  A substantial award of statutory damages is necessary to deter Bennett and others from future misconduct.

Given the nature of Bennett's conduct and the fact that she willfully compromised at least 87 Examination questions, statutory damages of up to $150,000 per question is warranted. However, given its desire to minimize the exposure of Examination questions and to reduce the burdens on the Court, ARRT only seeks statutory damages with respect to 10 questions in the amount of $30,000 per question.  This is the maximum amount per question for *non*-willful infringement even though statutory damages for *willful* infringement could be up to $150,000 per question.  The award of statutory damages that ARRT seeks is more than reasonable and appropriate considering that Bennett's wrongful conduct was willful and intentionally

-13-

undertaken for the purpose of generating a personal profit.  ARRT respectfully submits that the Court should grant its summary judgment motion and award it $300,000 in statutory damages. [3]

### C.     Summary Judgment Is Also Proper On ARRT's Breach Of Contract Claim.

A claim for breach of contract requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to plaintiff resulting from the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  All four elements are established by the undisputed facts in this case.

Bennett and ARRT had a valid contract.  In exchange for the benefits of ARRT Certification and Registration, Bennett repeatedly agreed she would not violate the security of ARRT Examination materials.  *See* Aberle Decl. Ex. 4 (Bennett Dep. at 95:18–105:15); Exs. 28-38.  The language of the contracts Bennett signed is clear and unambiguous and required Bennett to not engage in any "conduct that subverts or attempts to subvert ARRT's examination process."  *See* Reid Decl. ¶ 16, Exs. 9-12.  Yet despite this unambiguous language, Bennett repeatedly and purposefully sought out Examination questions from examinees and then provided those Examination questions to others who were preparing to sit for the Examinations. *See, e.g.,* Aberle Decl. Exs. 3-B–3H, 15-18, 21-25.

There can be no genuine dispute of material fact that Bennett promised not to subvert ARRT's Examination process, and then subverted it.  Nor can there be any question that

---

[3]   ARRT further asks that the Court award it its reasonable costs and attorneys' fees, which is available under the Copyright Act to the prevailing party. 17 U.S.C. § 505.  While "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), in the Fifth Circuit, "they are the rule rather than the exception and should be awarded routinely.'" *Hogan Sys., Inc. v. Cybresource Int'l., Inc.*, 158 F.3d 319, 325 (5th Cir. 1998). Given the exceptional and willful nature of Bennett's conduct, such an award is appropriate and, if the Court agrees, ARRT requests leave to submit evidence of its fees and costs incurred pursuing this claim.

Bennett's conduct caused significant harm to ARRT.  ARRT can no longer use the questions Bennett compromised on the Examinations and as a result of her conduct, ARRT was forced to retire at least 87 of its Examination questions from use, all at great expense to ARRT.  *See* Reid Decl. ¶ 19; Wood Decl. ¶ 4.

Bennett was legally bound by her promise not to violate the security of ARRT Examination materials.  She undisputedly breached that promise causing damage to ARRT. Summary judgment is therefore proper.  *See, e.g., American Gen. Life Ins. Co. v. Mickelson*, 2012 WL 6020339, at \*5-6 (S.D. Tex. Dec. 3, 2012) (granting summary judgment on breach of contract claim); *Textron Fin. Corp. v. Anchor Marine & Tackle, Inc.*, 2010 WL 2991068, at \*3 (W.D. Tex. July 26, 2010) (same); *see also National Council of Exam'rs for Eng'g & Surveying v. Cameron-Ortiz*, 626 F. Supp. 2d 262, 268-69 (D.P.R. 2009) (granting motion for default judgment on copyright infringement and breach of contract claims where student signed contract agreeing not to disclose examination materials and breached that agreement).

> **D.    Summary Judgment Is Proper On ARRT's Misappropriation Of Trade Secrets Claim Because Bennett Undisputedly Acquired And Used ARRT's Trade Secrets.**

The elements of a misappropriation of trade secrets claim are:  (a) the existence of a trade secret, (b) defendant's acquisition of the trade secret through breach of a confidential relationship or improper means, and (c) use of the trade secret without authorization.  *Wellogix, Inc. v. Accenture, LLP*, 2011 WL 1542557, at \*13 (S.D. Tex. Apr. 22, 2011).   ARRT can establish these elements based on the undisputed evidence in the record.

> **1.    ARRT's Examination Questions Qualify As Trade Secrets.**

A trade secret includes any formula, pattern, device, or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it.  *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). To determine whether information is a trade secret protected from disclosure or use, a court must examine six "relevant

-15-

but nonexclusive" criteria:  (1) the extent to which the information is known outside the business, (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to safeguard the secrecy of the information, (4) the value of the information to him and to his competitors, (5) the amount of effort or money expended in developing the information, and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  *Id.* at 739-40.  Consideration of these factors firmly establishes that ARRT's Examination questions qualify as trade secrets.

        As to the first criteria – the extent to which the information is known outside ARRT – it is undisputed that ARRT's item bank is not published or otherwise made available to the public, and the content of the item bank is not known outside of ARRT.  *See* Wood Decl. ¶ 2.  As for the second and third elements, as described in detail above, ARRT takes great measures to protect the Examination questions in its item bank.  Even within ARRT, only certain individuals who have a legitimate business purpose are able to access Examination questions through a secure network.  *Id.*  The Psychometric Services area, where the test items are housed, is a secure area and access is restricted.  *Id.*  ARRT's facility itself is locked and secured, and visitors must sign in and be escorted by ARRT staff.  *Id.*  And, of course, individuals seeking to sit for the Examinations are required to enter into non-disclosure agreements with ARRT.  *Id.*

        Fourth, the content of the item bank is of extraordinary value to ARRT.  It was established to promote high standards of patient care by developing and administering examinations for individuals seeking certification or licensure in certain fields of medical imaging.  *Id.* at ¶ 3.  Consistent with this mission, certain states, including Texas, enter into contracts with ARRT to use its Examinations as state licensure examinations.  *Id.*  The security and confidentiality of questions appearing on these Examinations is critical.  Without secure items, ARRT would not be able to offer these services or fulfill its mission.  *Id.*  The disclosure of questions appearing on the Examinations threatens the fundamental ability of the

-16-

Examinations to serve their purpose. *See Reid Decl.* ¶ 8.

Fifth, ARRT has expended a significant effort over many years to develop the Examination questions in its item bank. *See Wood Decl.* ¶ 3. While the exact amount of ARRT's financial investment in the development of its item bank is difficult to quantify, it is substantial. For example, ARRT expends approximately $1,018 in direct development costs per test item, which does not include all of its indirect costs. *Id.* Thus, when ARRT was forced to retire 87 questions as a result of Bennett's unlawful conduct, it lost $88,566 of the value of its investment in the direct development costs for those items. *Id.*

Finally, given the steps ARRT has taken to maintain the confidentiality of its item bank, the content of ARRT's item bank cannot be acquired by others by proper means. *Id.* Indeed, as this case demonstrates, the only way Bennett was able to access ARRT's copyrighted exam questions was by improperly asking recent test takers to try and recall questions.

These undisputed facts establish that the questions appearing on the Examinations constitute trade secrets within the meaning of the law. *See In re Frye*, 2008 WL 8444822, at *9 (B.A.P. 9th Cir. Aug. 19, 2008) (affirming award for trade secret misappropriation where defendant stole copyrighted nursing exam questions by "encourag[ing] students who had taken examinations to provide him with the questions."); *Ruston v. Dep't of Justice*, 521 F. Supp. 2d 18, 21 (D.D.C. 2007) (test questions properly withheld under FOIA exemption that protects against disclosure of trade secrets and confidential information).

## 2. Bennett Acquired ARRT's Trade Secrets Through Improper Means.

Bennett's own e-mail correspondence with her students as discussed above irrefutably establish the second prong of ARRT's trade secret claim. As those e-mails show, Bennett sought out individuals who had recently taken ARRT Examinations and pushed them to recall Examination questions and provide that confidential information to her. *See, e.g., Aberle Decl.* Ex. 19 (

Filed Under Seal

-17-



| Filed Under Seal | ); Ex. 20 ( | Filed Under Seal |
| --- | --- | --- |

Filed Under Seal                                                                          );

Ex. 14 (                          Filed Under Seal

Filed Under Seal                                       ).  Bennett was insistent in

her pursuit of questions, writing to one student           Filed Under Seal

Filed Under Seal                                                             *Id.* at Ex. 19.

Bennett's actions directly violated her non-disclosure agreement with ARRT, as well as the ARRT Standards of Ethics she annually agreed to follow.  She also improperly induced examinees, each with their own individual non-disclosure agreement with ARRT, to violate valid contracts.  This evidence is undisputed and shows that Bennett obtained ARRT Examination questions through improper means.

<blockquote>

### 3.   Bennett Used ARRT's Examination Questions Without Authorization.

</blockquote>

Finally, Bennett undisputedly used ARRT's trade secret information.  "Use" is defined as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant."  *General Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40).  In this case, Bennett "used" the examination questions to run a profitable business, causing harm to ARRT.

Specifically, Bennett used the Examination questions she acquired by distributing them to students who paid money to enroll in her examination prep course.  *See, e.g.*, Aberle Decl. Ex. 3-G, Ex. 7 (Paduganan Dep. at 23:4–26:19), Ex. 41.  It goes without saying ARRT did not authorize Bennett to engage in this unlawful conduct, which forced ARRT, at great expense, to retire 87 of its exam questions.  *See* Reid Dec. ¶¶ 14, 19, Exs. 1-4.  Yet even after ARRT filed its complaint, Bennett continued to offer her preparation courses for the Examinations.  *See* Aberle Decl. Ex. 4 (Bennett Dep. 131:17–132:2); Ex. 40.

Bennett cannot overcome these undisputed facts.  ARRT's motion for summary judgment

-18-

on its claim for trade secret misappropriation should therefore be granted.

**E.      Bennett Tortiously Interfered With ARRT's Contracts By Inducing Her
         Students To Reveal Confidential Examination Questions.**

Texas jurisprudence has long recognized that a party to a contract has a cause of action

for tortious interference against any third person who wrongly induces another contracting party

to breach their contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995). To prevail

on a claim for tortious interference, a plaintiff must establish (1) an existing contract subject to

interference, (2) a willful and intentional act of interference with the contract, (3) proximate

cause, and (4) actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs, Inc.*, 29

S.W.3d 74, 77-78 (Tex. 2000). A plaintiff need not prove that the defendant acted with intent to

injure. *Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

All four elements are established by the undisputed record evidence in this case.

First, ARRT requires every individual seeking to sit for the Examinations to enter into a

non-disclosure agreement in which they agree not to disclose questions appearing on the

Examinations. Wood Decl. ¶ 2, Exs. A-B. Examinees must also agree to ARRT's Standards of

Ethics, which prevent engaging in any "conduct that subverts or attempts to subvert ARRT's

examination process." *See* Reid Decl. ¶ 16. Second, Bennett knew ARRT required

non-disclosure agreements, yet she sent demanding e-mails to her students asking them to recall

and relay Examination questions to her. *See* Aberle Decl. Exs. 14, 19, 20. Bennett begged for

confidential information from individuals who had promised ARRT they would not disclose it.

Third, by inducing examinees to disclose test questions, Bennett destroyed the security of

those items. A compromised question threatens a variety of interests, including the interests of

other examinees, the interests of the general public in having safe radiologic technologists, and

the interests of ARRT in assessing an examinee's competence, knowledge, and skills. *See*

*Murray v. Ed. Testing Serv.*, 170 F.3d 514, 517 (5th Cir. 1999). As a direct result of Bennett's

conduct, ARRT had to retire at least 87 questions from its test item bank. But for Bennett's

conduct, ARRT could still use those questions. Finally, ARRT suffered actual damages and loss as a result of Bennett's actions. *See* Reid Decl. ¶¶ 18-19. *See Katzman*, 793 F.2d at 543 (noting that infringement of secure test questions "renders the materials worthless."); *Cameron-Ortiz*, 626 F. Supp. 2d at 269 ("In cases such as this, involving the infringement of secure standardized test questions, the loss in fair market value is appropriately calculated by determining the development costs for any infringed questions and infringed forms that are retired because of the compromise.").

Given all of these undisputed facts, the Court should grant summary judgment on ARRT's claim for tortious interference.

## V.    CONCLUSION

For the reasons stated above ARRT's motion for summary judgment should be granted in its entirety.

Respectfully submitted,

Dated:  January 23, 2013

By: */s/ Abigail Ottmers*

DORSEY & WHITNEY, LLP
Shari L. J. Aberle (MN No. 0306551)
    aberle.shari@dorsey.com
Eric R. Sherman (MN No. 0331430)
    sherman.eric@dorsey.com
Meghan E. Lind (MN No. 0389034)
    lind.meghan@dorsey.com
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

-and-

as a result of Bennett's actions. *See* Reid Decl. ¶¶ 18-19. *See Katzman*, 793 F.2d at 543 (noting that infringement of secure test questions "renders the materials worthless."); *Cameron-Ortiz*, 626 F. Supp. 2d at 269 ("In cases such as this, involving the infringement of secure standardized test questions, the loss in fair market value is appropriately calculated by determining the development costs for any infringed questions and infringed forms that are retired because of the compromise.").

     Given all of these undisputed facts, the Court should grant summary judgment on ARRT's claim for tortious interference.

## V.   CONCLUSION

     For the reasons stated above ARRT's motion for summary judgment should be granted in its entirety.

Respectfully submitted,

Dated:  January 23, 2013

By: _____

DORSEY & WHITNEY, LLP
Shari L. J. Aberle (MN No. 0306551)
   aberle.shari@dorsey.com
Eric R. Sherman (MN No. 0331430)
   sherman.eric@dorsey.com
Meghan E. Lind (MN No. 0389034)
   lind.meghan@dorsey.com
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

-and-

HAYNES AND BOONE, LLP
Abigail Ottmers
Texas State Bar No. 24037225
abigail.ottmers@haynesboone.com
112 East Pecan, Suite 1200
San Antonio, TX 78205
Telephone:  (210) 978-7000
Facsimile:  (210) 978-7450


## CERTIFICATE OF SERVICE

This certifies that on January 23, 2013, a true and correct copy of the *Plaintiff's Motion for Summary Judgment and Memorandum in Support* was served via e-mail on the parties who receive electronic notice in this case pursuant to the Court's ECF filing system, and upon the parties identified below in the manner indicated, in accordance with the Federal Rules of Civil Procedure.

Diane Bennett
6359 Cooksey Rd.
Adkins, TX 78101
*Defendant, Pro Se*

**Via e-mail** admin@courseproviders.net and info@courseproviders.net and **U.S. First Class Mail**


*/s/ Abigail Ottmers*
Abigail Ottmers