IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMERICAN REGISTRY OF RADIOLOGIC TECHNOLOGISTS, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CV. NO. SA-12-CV-00109-DAE |
| vs. | ) ) | |
| DIANE BENNETT, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER: (1) DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; (2) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT; (3) DENYING DEFENDANT'S MOTION FOR
SANCTIONS/CONTEMPT; AND (4) DENYING DEFENDANT'S MOTION
FOR SANCTIONS

On April 2, 2013, the Court heard Defendant Diane Bennett's Motion

for Summary Judgment (doc. # 41) and Plaintiff American Registry of Radiologic

Technologists' Cross-Motion for Summary Judgment (doc. # 47).  Shari L. J.

Aberle, Esq., appeared at the hearing on behalf of American Registry of Radiologic

Technologists ("ARRT" or "Plaintiff"); Diane Bennett ("Defendant") appeared pro

se.  After reviewing the Motions and the supporting and opposing memoranda, the

Court **DENIES** Defendant's Motion for Summary Judgment and **DENIES**

Plaintiff's Cross-Motion for Summary Judgment.  The Court also **DENIES**

1

Defendant's Motion for Sanctions/Contempt (doc. # 57) and Defendant's Motion

for Sanctions (doc. # 58).

BACKGROUND

Plaintiff is a nonprofit organization that develops and administers

examinations for individuals seeking certification in several fields of medical

radiologic technology.  (See Doc. # 47, Reid Declaration ¶ 3.)[1]  The examinations

at issue in this case are the Limited Scope of Practice in Radiography Examination

and the Bone Densitometry Equipment Operator Examination (collectively, "the

Examinations").  (Doc. # 47 at 2.)  A number of states, including Texas, use one or

both of the Examinations as state licensing examinations.  (Id. ¶ 6.)  Each

administration of an Examination features a different sampling of questions, all

drawn from a pool of confidential questions written and maintained by Plaintiff.

(Doc. # 47, Reid Declaration ¶ 7.)  Questions are reused in order to ensure

continuity and comparability of test scores.  (Id.)

In addition to developing and administering examinations, Plaintiff

maintains a registry of ARRT-certified radiologic technologists.  (Id. ¶ 12.)  In

order to be certified, one must graduate from an approved educational program,

---

[1]  Except where otherwise noted, all citations are to the docket in Cv. No. SA-12-CV-00109-DAE.

2

agree to comply with certain standards, and pass a certification examination.  (Id.)

Defendant obtained ARRT Certification in Radiography in 1993 and Bone

Densitometry in 2001.  (Doc. # 47, Aberle Declaration, Exs. 28, 29.)

   In 2007, Defendant started a company called Limited X-Ray

Licensure Course Providers, LLC ("Course Providers") (id. Ex. 8), which provided

students with study materials and instructional courses to assist them in taking state

licensing examinations to become limited scope radiology technologists and bone

densitometry equipment operators.  (Doc. # 41 at 3.)  It is undisputed that

Defendant asked prep course students who had already taken licensing

examinations to e-mail her questions that appeared on them, which she then

compiled into a series of e-mails that were sent to students preparing to take the

test.  (Doc. # 47 at 5–6; Doc. # 47, Aberle Declaration, Exs. 3-B–3-H, 14, 19, 20.)

   Plaintiff filed suit against Defendant and Course Providers on April

22, 2009 in the United States District Court for the District of Minnesota.  (No.

SA-09-CV-00767-XR, Doc. # 42 at 2.)  Plaintiff alleged causes of action for

copyright infringement, trademark infringement and unfair competition, and breach

of contract.  (Id. at 1.)  The United States District Court for the District of

Minnesota concluded that it lacked personal jurisdiction over the Defendant, and

on September 19, 2009 transferred the case to this Court.  (Id. at 8.)

On August 30, 2010, Course Providers filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (see In re X-Ray Licensure Course Providers, LLC, Bankr. Case No. 10-53275-LMC), and on September 2, 2010 Defendant followed suit (see In re Diane Bennett, Bankr. Case No. 10-53388-LMC).  Pursuant to 11 U.S.C. § 362(a), the Court ordered all proceedings in case number SA-09-CV-00767-XR stayed pending resolution of the bankruptcy proceedings.  (SA-09-CV-00767-XR, Doc. # 93.)

On December 13, 2010, Plaintiff filed a Complaint ("Compl.," doc. # 31 Ex. A) against Defendant in the Bankruptcy Court, thereby initiating an adversary proceeding (Adv. Proc. No. 10-05137-LMC).  The Complaint asserts causes of action for copyright infringement (Compl. ¶¶ 40–50), breach of contract (id. ¶¶ 51–56), tortious interference (id. ¶¶ 57–63), and misappropriation of trade secrets (id. ¶¶ 64–71).  On February 1, 2012, the case was withdrawn to this Court pursuant to 28 U.S.C. § 157.  (Doc. # 1.)

On August 23, 2012, Plaintiff filed a Motion to Reopen or Close Case No. SA-09-CV-00767-XR.  (Doc. # 10.)  On September 5, 2012, the Court denied Plaintiff's motion to reopen Case No. SA-09-CV-00767, finding that all claims in that case are encompassed within the instant action.  (Doc. # 11.)  The Court granted the motion insofar as it sought closure of Case No. SA-09-CV-00767.

(Id.)

On January 16, 2013, Defendant filed the Motion for Summary Judgment currently before the Court ("Defendant's Motion").  (Doc. # 41.)  On January 23, 2013, Plaintiff filed a Cross-Motion for Summary Judgment ("Plaintiff's Motion").  (Doc. # 47.)  On January 30, 2013, Plaintiff filed a Response in Opposition to Defendant's Motion (doc. # 51), and on February 6, 2013, Defendant filed a Response in Opposition to Plaintiff's Motion (doc. # 51). On February 7, 2013, Defendant filed a Reply in further support of her Motion (doc. # 52), and on February 15, 2013 Plaintiff filed a Reply in further support of its Motion (doc. # 53).

## LEGAL STANDARD

### I.   Summary Judgment

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). The moving party bears the initial burden of demonstrating the absence of any

genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

Plaintiff and Defendant each assert that they are entitled to summary judgment on Plaintiff's claims.  For the reasons that follow, the Court concludes that neither party has met its summary judgment burden with respect to any of Plaintiff's causes of action.

I.   <u>Copyright Infringement</u>

Plaintiff's cause of action for copyright infringement alleges that Defendant willfully infringed Plaintiff's copyrights by reproducing, publishing, and distributing copies of Plaintiff's Examination questions and related materials. (Compl. ¶¶ 40–50.)  Plaintiff argues that the record contains irrefutable evidence that it owned a valid copyright on the Examination questions at issue and that Defendant copied those Examination questions.  (Doc. # 47 at 7.)  In response, Defendant contends that Plaintiff has not established that it has a valid copyright in the questions at issue.  (Doc. # 41 at 12–14.)

"A copyright infringement action requires the plaintiff to prove ownership of a valid copyright and copying by the defendant."  <u>Norma Ribbon & Trimming, Inc. v. Little</u>, 51 F.3d 45, 47 (5th Cir. 1995).  Ownership is established by proving the originality and copyrightability of the material and compliance with statutory formalities.  <u>Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.</u>, 878 F.2d 806, 811 (5th Cir. 1989).  Copying is generally established by proving that the alleged infringer had access to the copyrighted materials and that the copyrighted material and allegedly infringing material are substantially similar.  <u>Norma Ribbon</u>, 51 F.3d at 47.

A.   <u>Does Plaintiff own a valid copyright?</u>

A copyright Certificate of Registration constitutes "prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c).  It is undisputed that Plaintiff obtained a Certificate of Registration from the United States Copyright Office.  (<u>See</u> Doc. # 47, Wood Declaration, Ex. C.)  However, "certificates create only a rebuttable presumption that the copyrights are valid." <u>Norma Ribbon</u>, 51 F.3d at 47.  Defendant argues that Plaintiff does not have a copyright in the individual Examination questions Defendant is alleged to have copied for several reasons.

First, Defendant asserts that Plaintiff has a copyright in the compilation of Examination questions but not in the questions themselves.  (Doc. # 41 at 13–14.)  Plaintiff's Certificate of Registration states that the copyrighted work is the "ARRT Test Item Bank."  (Doc. # 47, Wood Declaration, Ex. C.) Defendant maintains that the original work subject to protection is, therefore, the test bank in its entirety rather than the individual questions.  (Doc. # 41 at 13.)  To support this argument, Plaintiff cites to <u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 348 (1991).  In <u>Feist</u>, the Supreme Court discussed copyright law's disparate treatment of facts and factual compilations.  499 U.S. at 347.  Facts themselves are not copyrightable because they are discovered rather

8

than authored, so "[n]o one may claim originality as to facts." Id.  Factual

compilations, on the other hand, "may possess the requisite originality" because a

"compilation author typically chooses which facts to include, in what order to

place them, and how to arrange the collected data so that they may be used

effectively by readers." Id. at 348.  However, every element of a compilation is not

protected by copyright; the precise arrangement of the compiler is protected, but

not the underlying facts. Id.  Thus, according to Defendant, while the ARRT Test

Item Bank in its entirety is copyright-protected as a compilation, the individual

questions are not.

In response, Plaintiff points to numerous cases in which courts have

held that the specific questions appearing in secure examinations are subject to

copyright protection.  See, e.g., Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d

624, 627 (7th Cir. 2003) (noting that "tests are expressive works" and finding that

the defendant violated the plaintiff's copyright in the test at issue by publishing the

questions); Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986)

(holding that Educational Testing Services' questions are "'original works of

authorship' within the meaning of the copyright laws") (quoting 17 U.S.C.

§ 102(a)); Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, Inc., 458 F.

Supp. 2d 252, 259 (E.D. Pa. 2006) (observing that multistate bar examination

questions "reflect original expression in their wording, particularized facts, and answer choices"); Ass'n of Am. Med. Colls. v. Mikaelian, 571 F. Supp. 144, 150 (E.D. Pa. 1983) (holding that although questions on a medical school admission test invoke scientific facts, the form of the questions are the result of original work). The Court agrees with the cases cited by Plaintiff.  Although a question that appears on a test may be intended to assess the test-taker's knowledge of facts, the question itself—in its form and substance—is the original product of some author's labor.[2] Thus, if the questions are otherwise copyrightable, Plaintiff's copyright in the "Test Item Bank" extends to the individual questions themselves.

        Second, Defendant argues that Plaintiff does not own a valid copyright because the material is in the public domain and therefore not original.  To support this argument, Defendant submitted a document that purports to compare ten questions Plaintiff claims a copyright in to ten questions copyrighted by other authors.  According to Defendant, "[t]his side by side comparison demonstrates that the ARRT's alleged copyrighted works are copyrighted verbatim by other authors, lack creativity and originality and are in the public domain."  (Doc. # 51 at 5 (citing to Doc. # 51, Ex. 2).)  Plaintiff argues that the document is inadmissible because it

---

    [2] The Court finds unpersuasive Defendant's argument that it is "evident from a cursory review of the 87 questions at issue . . . [that] such questions contain absolutely no original expression in any form."  (Doc. # 41 at 12.)

"was never produced in discovery, there is no foundation for it, and it is little more than an unsubstantiated self-serving creation of Bennett's."  (Doc. # 49 at 8.) Plaintiff also asserts that even if the document were admissible, it fails to show that Plaintiff's questions are not original.  The Court agrees.

Assuming that the document in question is admissible and that it accurately represents other copyrighted work,[3] it nevertheless fails to show that there is any genuine dispute as to the originality of the material in question. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  Norma Ribbon, 51 F.3d at 47 (quoting Feist, 499 U.S. at 345).  "[T]he requisite level of creativity is extremely low; even a slight amount will suffice."  Feist, 499 U.S. at 345. Moreover, work may "closely resemble[]" other work and be original nonetheless "as long as the similarity is fortuitous, not the result of copying."  Id.

The document submitted by Defendant does not demonstrate, as Defendant claims, that Plaintiff's questions are "copyrighted verbatim by other authors."  (Doc. # 51 at 5 (emphasis added).)  On the contrary, the side-by-side comparisons show that the questions are similar but not identical.  The similarities

---

[3]  To be clear, the Court assumes, without deciding, that the document is admissible for purposes of this discussion.

appear to be a result of the fact that both Plaintiff and other companies seek to test knowledge of the same facts; in other words, the resemblance is fortuitous, not the result of copying.  The Court therefore concludes that Plaintiff has not shown that Plaintiff's questions are in the public domain.

Third, Defendant claims that Plaintiff has failed to produce any documents establishing that it is the author of or holder of a copyright in the questions at issue.  (Doc. # 52 at 6 ("Plaintiff maintains that they are the author and copyright holder of the 87 questions they alleged they had to retire, yet have failed to produce in discovery the court ordered documents to verify the truth of this.").) This claim is clearly without merit.  Plaintiff is listed as the author on the Certificate of Registration, thus giving rise to a rebuttable presumption that Plaintiff is indeed the author of the copyrighted material.  See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.") (emphasis added). Defendant has not produced any evidence to rebut that presumption.

Finally, Defendant asserts that Plaintiff's Examination questions "fall into the public domain because they exceed the copyright protection dates."  (Doc. # 41 at 9.)  This argument is based upon the fact that copies of the questions

Defendant is alleged to have compromised, printed from Plaintiff's computer system, show a copyright date of "1-1-1900." (Id.)  Accordingly, Defendant claims that Plaintiff's copyright in the questions at issue has expired.  (Id.)  This argument is absurd.  Plaintiff was not established until 1922, and did not begin offering standardized tests until the 1980s.  (Doc. # 47, Wood Declaration ¶ 4.)  The date is simply a default that all Examination questions were given when entered into Plaintiff's computer system.  (Doc. # 47 at 9; Doc. # 47, Wood Declaration ¶ 5.)

For the reasons stated above, the Court finds that Defendant has not rebutted the presumption that Plaintiff's copyright is valid.  Accordingly, Plaintiff has established that it owns a valid copyright in its test materials.

B.    Did Defendant copy Plaintiff's copyrighted material?

In order to establish that Defendant copied Plaintiff's original work, Plaintiff must prove (1) that Defendant actually copied Plaintiff's work, and (2) that substantial similarity exists between the copyrighted work and the allegedly infringing work.  See Bridgmon v. Array Sys. Corp., 325 F.3d 572, 575 (5th Cir. 2003).  "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."  Peel & Co., Inc. v. The Rug Mkt., 238 F.3d 391, 394 (5th Cir. 2001).  "[A]ccess through a third party

is legally sufficient." Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d

527, 533 n.6 (5th Cir. 1994) (quoting Arica Inst., Inc. v. Palmer, 970 F.2d 1067,

1074 (2d Cir. 1992)); see also Kamar Int'l, Inc. v. Russ Berrie & Co., 657 F.2d

1059, 1062 (9th Cir. 1981) ("[E]vidence that a third party with whom both the

plaintiff and defendant were dealing had possession of plaintiff's work is sufficient

to establish access by the defendant. . . .") (quoting 3 Nimmer on Copyright,

§ 13.02(A) at 13–11 (1981)).  A plaintiff may also establish factual copying without

any proof of access "by showing such a 'striking similarity' between the two works

that the similarity could only be explained by actual copying." Armour v. Knowles,

512 F.3d 147, 152 n.3 (5th Cir. 2007).

      1.    Factual Copying

      Plaintiff claims that "there can be no dispute that Bennett . . . solicited

her . . . students to provide her with Examination questions, obtained questions from

them, and then copied and distributed these questions to others."  (Doc. # 47 at 9.)

To support this assertion, Plaintiff points to Defendant's e-mail correspondence.[4]

For example, on January 29, 2008, Defendant sent an e-mail to Anthony Macca

("Macca"), which read in relevant part: "If you two have taken your exam please

forward any questions to me so that I can forward them to other student's, as you

---

    [4]  Typographical and grammatical errors have not been corrected.

14

can see, it really helps!"  (Doc. # 47, Aberle Declaration, Ex. 19.)  Macca replied:

"Hey, thanks for all the emails they helped a ton, i took my test today but i can not

remember the questions 100%, i wish i could im going to keep trying to piece them

together."  (<u>Id.</u>)  Defendant responded:

> YOU HAVE GOT TO REMEMBER some questions!  You must!  Sit
> down right now . . . and . . . try to come up with some!!!  They do
> really help!!!  Even if you could just remember the questions, you
> don't have to remember all the choices!

(<u>Id.</u>)  Macca replied: "Ok i got one, still working on more.  1)whats another term for

bleeding."  (<u>Id.</u>)  Plaintiff has produced similar e-mail exchanges between

Defendant and other students (<u>id.</u> Exs. 14, 20), as well as e-mails sent by Defendant

to various recipients that contain lists of topics and questions with headings like:

"New questions from students jut taking the exam."  (<u>Id.</u> Ex. 3-G.)

Plaintiff also submitted the deposition testimony of two of Defendant's

former students, Adam Brown ("Brown") and Nicole Steinhaus ("Steinhaus").

Brown and Steinhaus testified that Defendant sent them questions she had received

from "other students taking the test" (<u>id.</u> Ex. 5 at 16:22), which were "very similar

to the questions that were on the test. . ." (<u>id.</u> Ex. 6 at 20:11–12).  Finally, Plaintiffs

point out that Defendant's website gave the following as a reason to purchase her

courses: "In addition we send you any new questions we get from students recently

taking their exam so you have as many up to date questions as possible."  (Doc.

# 47 at 5.)

Defendant contends that Plaintiff's evidence fails to establish that Defendant had access to Plaintiff's copyrighted work.  According to Defendant, the evidence demonstrates that she e-mailed former students asking if they remembered anything from <u>some</u> previous examination, but not necessarily one of Plaintiff's Examinations.  (Doc. # 52 at 14.)  Defendant points out that none of the e-mails submitted as evidence by Plaintiff reference ARRT Examinations specifically, and asserts that her company prepared students for a wide variety of tests, including non-ARRT state-specific limited radiology licensure examinations.  (<u>Id.</u>)  The Court agrees; it is unable to find any reference to an <u>ARRT</u> Examination in the evidence Plaintiff cites.  The e-mails and the deposition testimony of Defendant's former students refer only to "exams" and "tests" generally.  (<u>See</u> Doc. # 47, Aberle Declaration, Exs. 3-B–3-G, 5, 6, 15–18, 21–25.)

Plaintiff contends that the "tests" and "exams" mentioned in Defendant's e-mail correspondence <u>must</u> be ARRT Examinations because Defendant did not offer preparation courses for any other tests.  To support this argument, Plaintiff points to a screenshot of the Course Providers website as it appeared on March 30, 2009.  (Doc. # 47, Aberle Declaration, Ex. 10.)  The website states that Course Providers prepares students for the "Limited Scope Radiology

Exam" and the "Limited Scope Bone Densitometry Exam."  (<u>Id.</u>)  It also refers

repeatedly to ARRT, noting that "the ARRT sends you [the student] . . . a 'Content

Specifications' outline" and promising that the Course Providers study guide

"follows the ARRT content specifications exactly."  (<u>Id.</u>)  Plaintiff maintains that

because the website refers only to <u>ARRT's</u> tests, and Defendant has produced no

evidence establishing that she prepared students for any non-ARRT—i.e. state-

specific—Limited Scope Radiology Exam or Limited Scope Bone Densitometry

Exam, all e-mail communications between Defendant and her students must be

referring to the Examinations at issue.

   The Court is not convinced that Plaintiff has met its summary

judgment burden with respect to the issue of access.  "[S]ummary judgment will not

lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v.

Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Plaintiff argues that the only

reasonable inference that can be drawn from the statements on the Course Providers

website is that Defendant prepared students for ARRT Examinations exclusively.

The Court disagrees.  The Course Providers website does not affirmatively state that

the company prepares students for ARRT Examinations only, merely that the

instruction will conform to ARRT content specifications.  The website's language is

not inconsistent with a finding that Defendant prepared students for other state-specific licensing examinations, as she claims to have done.[5]  The existence of other state radiologic licensing examinations is not merely hypothetical; Plaintiff's own evidence indicates that only thirteen states use one or both of the Examinations at issue as state licensure examinations.  (Doc. # 47, Reid Declaration ¶ 6.)

At the hearing, Plaintiff implied that the burden is on Defendant to produce evidence that she prepared students for tests other than the ARRT Examinations.  However, if Plaintiff does not first show that there is an absence of any genuine issue for trial, the burden does not shift to Defendant to come forward with specific facts that establish the existence of a genuine issue.  Here, Plaintiff has not established that Defendant's e-mail correspondence refers to ARRT Examinations specifically or that Defendant taught only ARRT courses.  Accordingly, Defendant need not come forward with evidence showing that she provided instruction to students studying for other exams or that the e-mails refer to

---

[5]  The Court notes that the Course Providers website promises to prepare students for the "Limited Scope in Radiology Exam" and "Limited Scope Bone Densitometry Exam."  (Doc. # 47, Aberle Declaration, Ex. 10.)  The ARRT Examinations at issue in this case are the "Limited Scope of Practice in Radiography Examination" and the "Bone Densitometry Equipment Operator Examination."  (Id., Reid Declaration ¶ 4.)  Defendant's failure to identify the ARRT Examinations by name may have been inadvertent, or it may have been the result of a conscious choice not to limit Course Providers' preparation courses to ARRT Examinations only.

18

a non-ARRT test.

In sum, Plaintiff has provided the Court with ample evidence that Defendant asked students to send her questions they had seen on examinations; distributed questions she had solicited from students to other individuals; and promised students that she would provide them with prior exam questions. However, the evidence simply does not conclusively establish that Plaintiff solicited, and received, questions from any ARRT Examinations.  Plaintiff has thus failed to establish that there is no genuine issue for trial regarding Defendant's access to the copyrighted work.

Plaintiff may nevertheless establish factual copying without any proof of access "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation. . . ."  Peel & Co., 238 F.3d at 395.  The works must be "so strikingly similar that copying is the only realistic basis for the similarities at hand." Armour, 512 F.3d at 156 n.19 (internal quotation marks omitted) (quoting 4 Nimmer on Copyright § 13.02(B) at 28.1 (2007)).  Plaintiff has submitted a side-by-side comparison of the ten copyrighted questions it alleges Defendant infringed and the allegedly infringing material Defendant sent to her students.  (Doc. # 47, Aberle Declaration, Ex. 2.)  The ARRT Examination questions and the information Defendant distributed in e-mails contain similar content.  In most cases, similar

words and phrases appear in the copyrighted work and in the allegedly infringing work, and both works address the same topic.  However, none of the pairs are identical and some are significantly different.  The Court cannot conclude that the works are so strikingly similar that the allegedly infringing work could not be the product of independent creation.  Plaintiff has failed to show that it is entitled to summary judgment with respect to the "factual copying" element of a copyright infringement claim.

2.    Substantial Similarity

In addition to proving that Defendant actually copied Plaintiff's original work, Plaintiff must also prove that the copying "constitute[d] legally actionable copyright infringement."  Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir. 1997).  "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'"  Id.

The Court has already determined that Plaintiff failed to demonstrate the absence of any genuine issue of material fact with respect to the element of actual copying.  However, Plaintiff's Motion for Summary Judgment would fail in any case, because the Fifth Circuit adheres to the rule that the question of

20

"substantial similarity" should "typically . . . be left to the factfinder" unless "the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression."  Peel & Co., 238 F.3d at 395; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247 (11th Cir. 1999) (noting that "[s]ummary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works").  Accordingly, a finding of infringement is generally inappropriate at the summary judgment stage.  See Flowserve Corp. v. Hallmark Pump Co., Inc., No. 4:09-CV-0675, 2011 WL 1527951, at *4 (S.D. Tex. Apr. 20, 2011) (noting that courts in the Fifth Circuit have granted summary judgment in favor of a plaintiff on a copyright infringement claim on only two occasions, when the works were so overwhelmingly similar as to preclude independent creation).

        Non-infringement, on the other hand, may be determined as a matter of law at the summary judgment stage if "no reasonable juror could find substantial similarity of ideas and expression," as noted above.  Peel & Co., 238 F.3d at 395; Herzog, 193 F.3d at 1247 ("[N]on-infringement may be determined as a matter of law on a motion for summary judgment . . . [if] no reasonable jury, properly

21

instructed, could find that the two works are substantially similar.").  However, Plaintiff's side-by-side comparison of the ten copyrighted questions and the allegedly infringing material (doc. # 47, Aberle Declaration, Ex. 2) reveals that, although not identical, the works are similar enough that a reasonable juror could find substantial similarity of ideas and expression.

Accordingly, the Court concludes that neither party has met its burden with respect to Plaintiff's copyright infringement claim and **DENIES** both Motions for Summary Judgment insofar as they seek judgment on that claim.

II.    Breach of Contract

Plaintiff's breach of contract claim alleges that Defendant's agreement to abide and be legally bound by Plaintiff's Standards of Ethics constitutes a valid contract between Plaintiff and Defendant, and that Defendant breached the contract by allegedly subverting Plaintiff's examination process.  (Compl. ¶¶ 51–56.)  Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."  Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App. 1997).

The Court concludes that there is no genuine dispute as to the existence

of a valid contract.  Plaintiff requires individuals who wish to be registered as

certified in a certain discipline to take an examination and submit an annual

Application for Renewal of Registration ("Application").  The Application asks

registrants for certain information, such as their current address and whether they

have been convicted of any crimes.  (Doc. # 47, Aberle Declaration, Ex. 30.)  It also

requires registrants to sign below the following statement:

> The terms and conditions set forth in the "Agreement of Applicants for
> Renewal of Registration" section of the ARRT Rules and Regulations
> provided to me are hereby incorporated in and made a part of this
> Application by this reference as fully as though the same were set forth
> in full in this place, and by signing this Application in the space
> provided below, I hereby consent to, and agree to be legally bound in
> all respect by each and all of such terms and conditions.

(Id.)  By signing the Application, registrants agree to be bound by all terms and

conditions contained in Plaintiff's "Governing Documents," including Plaintiff's

Standards of Ethics.  (See, e.g., Doc. # 47, Reid Declaration, Ex. 7 § 5.02.)

Defendant obtained ARRT Certifications in Radiography in 1993 and

Bone Densitometry in 2001 (id. Ex. 4 at 94–95), and each year thereafter signed and

submitted the Application (id. Exs. 30–38).  Nevertheless, Defendant argues that

she is not contractually obligated to abide by Plaintiff's Standards of Ethics for two

reasons.  (Doc. # 51 at 12; Doc. # 41 at 18.)  First, Defendant argues that she was

not aware of any contractual obligations other than those stated on the face of the Application.  (Doc. # 51 at 12.)  This argument is meritless.  The Application clearly states that Plaintiff's Rules and Regulations are "incorporated in and made a part of [the] Application" (doc. # 47, Reid Declaration, Ex. 30), and "[a] party who signs a document is presumed to know its contents, including documents specifically incorporated by reference."  In re Int'l Profit Assocs., Inc., 286 S.W.3d 921, 923 (Tex. 2009) (internal citation marks omitted) (quoting In re Lyon Fin. Servs., 257 S.W.3d 228, 232 (Tex. 2008)).

Second, Defendant argues that the contract fails for lack of consideration, because she "has not paid any fees to [Plaintiff] as consideration for maintaining her license in good standing. . . ."  (Doc. # 41 at 18.)  That claim is false, as evidenced by the "Amount Due" stated on each Application, and by Defendant's own statement elsewhere that "[i]n order to renew her certification Defendant was required to . . . pay a registration fee to [Plaintiff] annually."  (Doc. # 51 at 12.)  In any event, consideration need not be pecuniary in nature; there must simply be "a present exchange bargained for in return for a promise."  Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991); Angelou v. African Overseas Union, 33 S.W.3d 269, 280 (Tex. App. 2000).  Here, Defendant promised to abide by Plaintiff's Rules and Regulations in exchange for renewal of her

24

registration.

As for the second element of a breach of contract claim, there does not appear to be any dispute that Plaintiff performed; Defendant does not assert that Plaintiff refused to renew her registration or otherwise failed to perform.  However, turning to the third element—breach by the defendant—the Court concludes that Plaintiff has failed to meet its summary judgment burden.

Plaintiff's Standards of Ethics prohibit, among other things, "disclosing information concerning any portion of a future, current, or previously administered examination," and "disclosing what purports to be, or under all circumstances is likely to be understood by the recipient as . . . 'inside' information concerning any portion of a future, current, or previously administered examination."  (Doc. # 47, Reid Declaration, Ex. 9 Part B(2)(i).)  Plaintiff argues that Defendant breached her contractual obligation to abide by the Standards of Ethics when she "repeatedly and purposefully sought out Examination questions from examinees and then provided those Examination questions to others who were preparing to sit for the Examinations."  (Doc. # 47 at 14.)  For the same reasons the Court concluded that Plaintiff failed to establish that Defendant actually copied Plaintiff's original work, the Court concludes that Plaintiff has failed to establish that Defendant breached the contract.  Plaintiff's evidence shows that Defendant

solicited exam questions from students who had recently taken a particular exam, and then sent the questions she obtained to students preparing to take the same exam.  The evidence does not, however, establish that the students had taken or were preparing to take an <u>ARRT</u> exam.  Thus, Plaintiff has failed to meet its summary judgment burden with respect to its breach of contract claim.

Defendant has also failed to meet her summary judgment burden.  In addition to Defendant's arguments regarding the validity of the contract discussed (and dismissed as unmeritorious) above, Defendant argues that Plaintiff's breach of contract claim fails because it is barred by the statute of limitations.  (Doc. # 41 at 18.)  This argument is without merit.  In Texas, breach of contract claims are subject to a four-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.051 (2008); <u>see also</u> <u>Exxon Corp. v. Emerald Oil & Gas Co., L.C.</u>, 348 S.W.3d 194, 203 (Tex. 2011).  A claim for breach of contract accrues when the contract is breached. <u>See</u> <u>Stine v. Stewart</u>, 80 S.W.3d 586, 592 (Tex. 2002).  In this case, Plaintiff alleges that Defendant breached the contract in 2008 (doc. # 47 at 5–6) and the action was commenced in April 2009—well within the four-year period.

Accordingly, the Court **DENIES** both parties' Motions for Summary Judgment insofar as they seek judgment on Plaintiff's breach of contract claim.

III.    <u>Tortious Interference</u>

Plaintiff's tortious interference claim alleges that Defendant induced individuals who had taken ARRT examinations to breach their contractual obligations to Plaintiff.  (Compl. ¶¶ 57–63.)  To prevail on a claim for tortious interference, a plaintiff must establish: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."  <u>Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.</u>, 29 S.W.3d 74, 77 (Tex. 2000).  The Court concludes that Plaintiff has not established that it is entitled to summary judgment on this claim.

Every individual who sits for an ARRT exam must agree not to disclose exam questions, and must also agree to comply with Plaintiff's Standards of Ethics.  (<u>See</u> Doc. # 47, Wood Declaration, Exs. A, B; Doc. # 47 at 19.)  According to Plaintiff, by "demanding" that her students "recall and relay [exam] questions to her," Defendant induced the students to violate their agreement with Plaintiff.  (Doc. # 47 at 19.)  Plaintiff's argument suffers from a familiar problem: the evidence shows that Defendant asked at least three students to disclose exam questions to her (doc. # 47, Aberle Declaration, Exs. 14, 19, 20), and that one actually sent her a question (<u>id.</u> Ex. 19), but nothing in the e-mail exchanges

27

submitted to the Court establishes that the students in question <u>had taken an ARRT</u>
<u>exam</u>.  Nor has Plaintiff produced any non-disclosure agreements signed by any of
the individuals with whom Defendant engaged in e-mail correspondence.  Thus,
Plaintiff has failed to show that there is no genuine dispute of material fact with
respect to its claim for tortious interference.

   Defendant argues that she is entitled to summary judgment on
Plaintiff's tortious interference claim because Plaintiff has failed to prove that she
committed any "independent tort."  (<u>Id.</u>)  Citing to <u>Wal-Mart Stores, Inc. v. Sturges</u>,
52 S.W.3d 711, 713 (Tex. 2001), Defendant argues that in order to establish
liability for tortious interference, a plaintiff must prove that the defendant's act of
interference was independently tortious.  (Doc. # 41 at 19.)  <u>Sturges</u>, however,
addressed tortious interference with business relations, not tortious interference
with contract, and therefore does not apply here.  <u>See</u> <u>Sturges</u>, 52 S.W.3d at 713
("[T]o establish liability for interference <u>with a prospective contractual or business</u>
<u>relation</u> the plaintiff must prove that it was harmed by the defendant's conduct that
was either independently tortious or unlawful.") (emphasis added); <u>In re Wright</u>,
No. SA-03-CV-932, 2004 WL 569517, at *5 (W.D. Tex. Mar. 8, 2004) ("<u>Sturges</u>
was clearly addressing tortious interference with prospective business relations, not
tortious interference with contract.").

The Court therefore **DENIES** both parties' Motions for Summary Judgment insofar as they seek judgment on Plaintiff's claim for tortious interference.

IV.    Misappropriation of Trade Secrets

Plaintiff's fourth and final cause of action alleges that Defendant misappropriated Plaintiff's trade secrets "by unlawfully and improperly soliciting, obtaining and distributing questions appearing on [Plaintiff's] Examinations. . . ." (Compl. ¶¶ 64–71.)  Under Texas law, misappropriation of trade secrets is established by showing: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."  Phillips v. Frey, 20 F.3d 623, 627 (5th Cir. 1994).  Defendant contends that she is entitled to summary judgment because Plaintiff's Examination questions do not constitute trade secrets.  (Doc. # 41 at 15–18.)

"A trade secret is any formula, pattern, device or compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it."  Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1123 (5th Cir. 1991).  The Texas Supreme Court has adopted the Restatement of Torts' six-factor test to determine whether a trade

29

secret exists:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

In re Bass, 113 S.W.3d 735, 739 (Tex. 2003) (quoting Restatement of Torts § 757 Comment B (1939).  The factors are "relevant, but not dispositive," and a party claiming a trade secret need not satisfy all six factors.  Bass, 113 S.W.3d at 739–40.

With respect to the first, second, and third factors, Plaintiff has demonstrated that its Examination questions are not published or otherwise made known to the public, and even within ARRT, only certain employees are able to access the Examination questions, which are kept in a secure area.  (Doc. # 47, Wood Declaration ¶ 2.)  Examination questions are, of course, revealed to test-takers, but only after test-takers sign a non-disclosure agreement.  (Id.)  As for the fourth factor, Plaintiff asserts that its test item bank is of "extraordinary value," as it enables Plaintiff to fulfill its mission of promoting high standards of patient care and providing states with licensing examinations.  (Doc. # 47 at 16.)  Plaintiff observes that "[t]he security and confidentiality of questions appearing on [the

Examinations] is critical," because "[w]ithout secure items, [Plaintiff] would not be able to offer these services or fulfill its mission."  (Id.)  Turning to the fifth factor, Plaintiff asserts that it has committed a significant amount of resources to the development of Examination questions—approximately $1,018 per question, according to Plaintiff's Director of Psychometric Services.  (Doc. # 47, Reid Declaration ¶ 4.)  Finally, given the steps Plaintiff has taken to keep its test item bank confidential, it would be very difficult for a competitor to acquire the specific questions developed by Plaintiff.  (Doc. # 47 at 17.)

Plaintiff contends that Plaintiff's Examination questions are not "trade secrets" because "[p]ublic libraries, encyclopedias, the Internet, and a plethora of other sources provide identical questions . . . and not one single item that is included for testing on Plaintiff's examinations are not available to the public in one or more of these public sources."  (Doc. # 41 at 17.)  Plaintiff does not provide any evidence to support this contention, and the Court finds it wholly unconvincing.  Although the knowledge tested on Plaintiff's Examinations may be widely available, Defendant has provided the Court with no reason to believe that the precise questions Plaintiff has expended money to formulate are in the public domain.  The Court concludes that Plaintiff's Examination questions constitute trade secrets.

However, for the same reasons discussed above, the Court concludes that Plaintiff has not established that Defendant acquired its Examination questions by improper means.  Plaintiff claims that Defendant's e-mails show that Defendant "sought out individuals who had recently taken ARRT Examinations and pushed them to recall Examination questions and provide that confidential information to her" (doc. # 47 at 17), but nothing in the e-mails themselves indicates that the students had recently taken ARRT Examinations.  (Doc. # 47, Aberle Declaration, Exs. 14, 19, 20.)  Nor has Plaintiff produced any other evidence showing that the students in question had registered for or taken an ARRT Examination.  The evidence before the Court is equally consistent with a finding that Defendant was asking students to reveal questions they had seen on a non-ARRT state licensing examination as it is with a finding that Defendant was asking students to send her ARRT Examination questions.  Thus, summary judgment is not appropriate.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 590 (1992) ("A genuine issue exists so long as the evidence is such that a reasonable jury could return a verdict for the nonmoving party. . . .") (internal quotation marks omitted) (quoting Liberty Lobby, 477 U.S. at 248).

V.    Defendant's Affirmative Defenses

Defendant claims that she is entitled to summary judgment on each of

Plaintiff's claims because the claims are barred by laches, estoppel and

acquiescence.

     A.   <u>Laches</u>

        To establish that Plaintiff's causes of action are barred by laches,

Defendant must show: (1) a delay in asserting the rights or claims; (2) that the delay

was not excusable; and (3) that the delay caused undue prejudice to Defendant.

<u>Geyen v. Marsh</u>, 775 F.2d 1303, 1310 (5th Cir. 1985).  Undue prejudice may be

"either economic (e.g., loss of monetary investments, incurring damages that might

otherwise have been avoided by an earlier suit) or evidentiary, i.e., preventing the

defendant from presenting a full and fair defense on the merits (e.g., loss of records,

death of a witness, deteriorating memories of past events)."  <u>Altech Controls Corp.</u>

<u>v. EIL Instruments, Inc.</u>, 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998).  Defendant

bears the burden of proving laches by a preponderance of the evidence.  <u>Id.</u>

        Defendant claims that Plaintiff unreasonably delayed in asserting its

claims because it knew of Defendant's alleged misconduct fourteen months before

it filed suit.  (Doc. # 41 at 21 ("[T]hey knew of the Defendant's website and of the

Defendant's exam preparation course yet sat idly by for 14 months before filing

suit.").)  To support this claim, Defendant has submitted evidence showing that

Plaintiff's Senior Examination Development Coordinator Nancy Cavallin

("Cavallin") attempted to purchase Defendant's course materials through Defendant's website in February 2008.  (Doc. # 41 Ex. 3.)  Cavallin's purchase request was denied because, according to an e-mail notification sent to Cavallin by Defendant, the company was still "attempting [to] ensure regulatory compliance nationwide" and did not yet have "permission to provide such test preparation materials for applicants in [Cavallin's] state. . . ."  (Id. Ex. 4.)

The Court is not convinced that a delay of fourteen months under these circumstances would be unreasonable.  In any event, as Plaintiff points out, Defendant's evidence of Cavallin's attempted purchase does not demonstrate that Plaintiff was aware of Defendant's alleged misconduct in February 2008, fourteen months before it filed suit.  (Doc. # 49 at 18.)  On the contrary, the evidence shows that Plaintiff was not made aware of Defendant's alleged misconduct in February 2008, because Cavallin's purchase request was denied.  (Doc. # 49 at 18.)  Furthermore, Defendant does not assert that she suffered any prejudice as a result of Plaintiff's undue delay.  Defendant has failed to demonstrate that any of Plaintiff's claims are barred by laches.

B.      Equitable Estoppel and Acquiescence

A plaintiff is barred from bringing a copyright infringement action under the doctrine of equitable estoppel if: (1) the plaintiff knew the facts of the

34

defendant's allegedly infringing conduct; (2) the plaintiff intended that its conduct be acted upon or acted in such a way that the defendant had a right to believe that plaintiff so intended; (3) the defendant was ignorant of the true facts; and (4) the defendant relied on the plaintiff's conduct to its detriment.  Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003) (citing 4 Nimmer on Copyright § 13.07 (2002)). Estoppel may also "be accomplished by a plaintiff's silence and inaction."  Id. Similarly, "acquiescence involves the plaintiff's implicit or explicit assurances to the defendant which induces reliance by the defendant."  Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 153 (5th Cir. 1985).  Both equitable estoppel and acquiescence thus depend upon a showing that the plaintiff acted in such a way that the defendant was led to believe that the plaintiff did not object to the defendant's conduct, or did not intend to enforce his rights.

Defendant asserts that she "had every right to believe Plaintiff" approved of her exam preparation course, apparently because of Cavallin's attempted purchase in February 2008.  (Doc. # 51 at 17.)  Defendant did not allege in her Motion for Summary Judgment or in her various responses and replies that she was aware that Cavallin was Plaintiff's employee when Cavallin attempted to gain access to Defendant's course materials.  However, at the hearing, Defendant asserted that she was, in fact, aware that Cavallin was an ARRT employee because

Defendant looked Cavallin up on the Internet when she attempted to purchase Defendant's course materials.  This assertion is not, of course, evidence sufficient to meet Defendant's burden on summary judgment and, in any event, Defendant fails to explain why Cavallin's attempted purchase led her to believe Plaintiff did not intend to enforce its rights or did not object to Defendant's conduct.  Moreover, for the reasons discussed above, Cavallin's attempted purchase does not establish that Plaintiff was aware of Defendant's allegedly infringing conduct.  Defendant has failed to establish that Plaintiff's claims are barred by estoppel or acquiescence.

VI.   <u>Defendant's Motions for Sanctions and Contempt</u>

     A.   <u>Motion for Sanctions/Contempt for Failure to Comply with Court Order</u>

On April 3, 2013, following the hearing on the parties' Motions for Summary Judgment, Defendant filed a Motion for Sanctions/Contempt for Plaintiff's Failure to Comply with a Court Order ("Motion for Sanctions/Contempt").  (Doc. # 57.)  Defendant claims that Plaintiff has failed to comply with a July 28, 2011 Order of the Bankruptcy Court (Adv. Proc. No. 10-05137-LMC, doc. # 73).  (Doc. # 57 at 2.)

On June 13, 2011, Defendant filed a Motion to Compel Production of Documents and Answers to Interrogatories ("Motion to Compel").  (Adv. Proc. No.

10-05137-LMC, Doc. # 46.)  Plaintiff filed a Response in Opposition to

Defendant's Motion to Compel, which stated that Plaintiff had already provided

responses to Defendant's interrogatories, had produced numerous documents, and

had additional documents ready for production upon entry of an appropriate

protective order.  (Adv. Proc. No. 10-05137-LMC, Doc. # 55.)  The Bankruptcy

Court's July 28, 2011 Order denied Defendant's Motion to Compel and ordered that

Plaintiff may produce discoverable materials pursuant to the terms of a Protective

Order entered at Plaintiff's request on June 30, 2011 (Adv. Proc. No. 10-05137-

LMC, doc. # 60).  (Adv. Proc. No. 10-05137-LMC, Doc. # 73 at 2.)  The

Bankruptcy Court did not, as Defendant claims, order that Plaintiff produce any of

the materials Defendant sought in her Motion to Compel.  It merely ordered that,

insofar as Plaintiff intended to produce sensitive documents, it could produce them

pursuant to the terms of the Protective Order.  Plaintiff has therefore not violated

any court order, and Defendant's Motion for Sanctions/Contempt is **DENIED**.

(Doc. # 57.)

   In its Response in Opposition to Defendant's Motion for

Sanctions/Contempt, the Plaintiff asks that the Court award it reasonable expenses

incurred in responding to Defendant's "frivolous" motion.  (Doc. # 59 at 4.)

Plaintiff asserts that an award of attorneys' fees is warranted pursuant to Federal

Rule of Civil Procedure 37(a)(B). (Id.) Federal Rule of Civil Procedure 37(a)(B) does not exist. See Fed. R. Civ. P. 37. Plaintiff may have intended to cite to Federal Rule of Civil Procedure 37(a)(5)(B), which provides that if a motion to compel disclosure or discovery is denied, the court must require the movant to pay the non-movant its reasonable expenses incurred in opposing the motion. Fed. R. Civ. P. 37(a)(5)(B). However, that rule is inapposite; Defendant did not file a motion to compel disclosure or discovery. The Court is not aware of any other provision of Federal Rule of Civil Procedure 37 that would authorize an award of attorney's fees to the non-moving party when a motion for sanctions for failure to comply with a court order is denied.

      B.      <u>Motion for Sanctions for Fraud on the Court</u>

On April 3, 2013, Defendant also filed a Motion for Sanctions for Plaintiff's Fraud on the Court ("Motion for Sanctions"). (Doc. # 58.) Defendant claims that Plaintiff's attorney has committed fraud on the court by misrepresenting certain evidence. (Id.) Specifically, Defendant points out that Plaintiff's Motion for Summary Judgment stated that Defendant continued to unlawfully distribute ARRT Examination questions to students even after ligation was commenced. (Id. at 2.) To support this claim, Plaintiff submitted numerous e-mails Defendant sent to hansing@ipmvs.com on April 30, 2009. (See Doc. # 47, Aberle Declaration, Ex. 3-

A.)  According to Plaintiff, that e-mail address belongs to her former attorney, Mark Hansing.  (Doc. # 58 at 2.)  Defendant argues that Plaintiff's attorney intended to mislead the Court by representing that Defendant continued to send Examination questions to her students when in fact she was sending them to her attorney.  (Id. at 3.)

Defendant asks the Court to "use its inherent power and discretion to impose sanctions" on Plaintiff's attorney.  (Doc. # 58 at 4.)  The Fifth Circuit has held that "[i]n order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" Elliot v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995).  Here, there is no evidence that Plaintiff's attorney acted in bad faith.  As Plaintiff's Response in Opposition points out, nothing on the face of the e-mails at issue indicates that the recipient is an attorney, and the e-mails are nearly identical to e-mails Defendant sent to her students.  (Doc. # 60 at 3–4.)  Moreover, Plaintiff's lead attorney when the litigation was commenced in 2009 subsequently left the law firm representing Plaintiff, and a new lead attorney took over the case.  (Id. at 3 n.3.)  Plaintiff's current lead attorney was not involved in the case in 2009 and was unaware that Mark Hansing was counsel for Ms. Bennett at that time, or that hansing@ipmvs.com is his e-mail address.  (Id.)  Finally, Plaintiff's attorney asks that the Court, "[i]n the interests of

efficiency," disregard the e-mails in question in its consideration of Plaintiff's Motion for Summary Judgment.  (Id. at 4–5.)  Accordingly, the Court **DENIES** Defendant's Motion for Sanctions.  (Doc. # 58.)

In its Response in Opposition, Plaintiff asks the Court to impose sanctions on Defendant for making "extremely serious allegations of intentional fraud" without "any evidence" or "apposite case law" to support her motion.  (Doc. # 60 at 5.)  Plaintiff asks the Court for an award of reasonable costs and fees incurred in responding to Defendant's frivolous motion.  (Id.)  The Court concludes that Defendant's Motion for Sanctions is not so baseless as to warrant the imposition of sanctions on a pro se litigant.  However, the Court cautions Defendant that she is not immune to sanctions, see Stelly v. C.I.R., 761 F.2d 1113, 1116 (5th Cir. 1985) (per curiam) ("Although a court can demand a higher degree of responsibility from members of the bar, litigants cannot be treated as free to advance frivolous claims merely because they appear without counsel."), and must take care not to file motions designed to harass or delay.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (doc. # 41), Plaintiff's Cross-Motion for

40

Summary Judgment (doc. # 47), Defendant's Motion for Sanctions/Contempt

(doc. # 57) and Defendant's Motion for Sanctions (doc. # 58).

      IT IS SO ORDERED.

      DATED: San Antonio, Texas, April 11, 2013.

      _____

      David Alan Ezra
      Senior United States District Judge

41